[No. 58437-1. En Banc. December 10, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. SAMUEL J. MCDOUGAL, *Respondent*.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John C. Monter, Deputy,* for petitioner.

*Louis Daniel Fessler* of *Department of Assigned Counsel,* for respondent.

*Donald C. Brockett, Prosecuting Attorney for Spokane County,* and *Kevin M. Korsmo, Deputy; C. Danny Clem, Prosecuting Attorney for Kitsap County,* and *Pamela B. Loginsky, Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Jones, Assistant,* amicus curiae for petitioner.

*Michael Spearman* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

SMITH, J. — The State of Washington seeks discretionary review of a decision of the Court of Appeals, Division Three, vacating a Yakima County Superior Court order modifying Respondent Samuel J. McDougal's sentence for possession of a controlled substance (cocaine) and remanding the case to the trial court for resentencing for violation of conditions of the court's sentencing order. We granted review. We reverse the Court of Appeals and affirm the trial court.

Two principal questions are raised by this case: (1) whether RCW 9.94A.200(2)(b) authorizes a separate 60-day term for each violation of a condition of a sentence or authorizes only a maximum 60-day term for all violations proved in one hearing; and (2) whether the trial court abused its discretion by imposing consecutive sentences of 45 days for each of 10 violations of sentencing conditions, for a total of 450 days, thus exceeding the defendant's standard upper sentencing range of 90 days for the underlying offense calculated under the Sentencing Reform Act of 1981.

On November 17, 1987, Samuel J. McDougal (Respondent) was charged by information in the Yakima County Superior Court with a class "C" felony,[1] possession of a controlled sub-

---

[1]RCW 69.50.401 does not designate a classification for possession of a controlled substance, cocaine, a schedule 2 offense, RCW 69.50.206(b)(5). However, in *State v. Smith,* 93 Wn.2d 329, 342, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980), this court, in discussing the statute as it applied to possession or delivery

stance, cocaine.[2] On December 3, 1987, he pleaded "guilty" to the charge.[3] The maximum sentence for the offense under RCW 69.50.401(a)(1)(i) is 10 years.[4] The standard range for Respondent's sentence under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, was 0 to 90 days, based on his offender score of zero (0).[5] Following his plea, Respondent was sentenced by the Honorable Walter A. Stauffacher on December 3, 1987, to confinement for 30 days and community supervision for 1 year.[6]

The community supervision section of the judgment and sentence, with blanks filled in (underlined portions) and selected provisions checked, provided:[7]

> The defendant shall serve 12 months of community supervision. Community supervision shall commence upon release. . . . Defendant shall report within 24 hours of this order of release from total or partial confinement to the Department of Corrections, Yakima, Washington, and shall comply with all rules,

---

of marijuana, a schedule 1 offense, RCW 69.50.204(d)(13), for crimes committed before July 1, 1984, stated that:

> The statute does not expressly designate the offense a felony, but rather calls it a "crime." The punishment prescribed is provided in RCW 9A.20.020 for class C felonies, and this offense should be regarded as such.

RCW 9A.20.021 applies to crimes committed after July 1, 1984. It applies to this case. RCW 9A.20.021(1)(c) provides in relevant part that:

> No person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
>
> . . . .
>
> For a class C felony, by confinement in a state correctional institution for five years, or by a fine in an amount fixed by the court of ten thousand dollars, or by both such confinement and fine.

[2]Clerk's Papers, at 24.

[3]Clerk's Papers, at 20.

[4]Respondent was charged under RCW 69.50.401, but the information indicated that the maximum penalty was 5 years.

[5]The "Judgment and Sentence" indicates an offense score of 2, apparently referring to offense level. Clerk's Papers, at 20.

[6]Clerk's Papers, at 20.

[7]Clerk's Papers, at 20.

regulations and requirements [of] the Department, and the conditions below:

....
[XX] Shall not use or possess any controlled substance, including marijuana, without a valid prescription.

....
[X] Shall have no contact with Suzzane Hodgins without written permission of the supervising officer.
[XX] . . . Defendant shall submit to urinalysis testing as ordered by the Department of Corrections. This is to assure compliance with conditions of supervision.
*Violations of the conditions or requirements of this sentence are punishable for a period not to exceed sixty (60) days of confinement for each violation.*

(Italics ours.)

At sentencing, Respondent was given a document entitled "Standard Conditions and Sentence Requirements", with selected provisions checked, which provided:

CONDITIONS:
1. [X] Submit an accurate written monthly report to the community corrections officer and report in person or as otherwise directed.
2. [X] Obtain written permission from the community corrections officer before traveling outside the county in which you reside, unless you have been advised in writing by your community corrections officer that it is not necessary to do so.
3. [X] Secure written permission from the community corrections officer before leaving the state of Washington.
4. [X] Obtain permission from the community corrections officer before changing residence or change in employment.
5. [X] Abide by any additional conditions imposed in writing by the court, and follow the instructions of the community corrections officer in meeting any and all conditions imposed by the court.
6. [X] Submit to a search of your person, residence, vehicle and other belongings when ordered to do so by the community corrections officer.

On April 29, 1988, Respondent was charged with violating conditions of his sentence by failing to report to Treatment Alternatives to Street Crime (TASC), a local drug/alcohol evaluation and treatment facility, for urinalysis.[8] After a hearing, he was sentenced on November 11, 1988,

[8] Clerk's Papers, at 11-13.

by the Honorable Stephen M. Brown to an additional 8 days of confinement.[9] The court determined that 8 months of Respondent's community supervision had been tolled and his community supervision was extended for an additional 8 months.[10] This would have extended it to August 4, 1989.

On October 4, 1989, the Yakima County Prosecuting Attorney petitioned the Superior Court to modify the sentence previously imposed on Respondent, alleging 10 violations of its conditions.[11] The alleged violations were:

1. Using marijuana on March 31, 1989.
2. Using marijuana on April 14, 1989.
3. Using marijuana on April 28, 1989.
4. Using Darvon on May 12, 1989.
5. Using Darvon on May 31, 1989.
6. Failing to report for UA's[12] on June 9, 1989.
7. Failing to report for UA's on June 23, 1989.
8. Failing to report for UA's on July 14, 1989.
9. Moving from his residence on 48th Avenue to an unknown residence on or about June 15, 1989.
10. Failing to report to assigned CCO on July 3, 1989, as ordered.[13]

On January 19, 1990, a supplemental probation violation report was filed, alleging two additional violations:

▪ Leaving the State of Washington and journeying to the state of Montana sometime prior to 12-20-89 without receiving permission from his supervising Community Corrections Officer

---

[9]Clerk's Papers, at 14.

[10]Clerk's Papers, at 15.

[11]This is 2 months beyond the supervision time of August 4, 1989, extended by the trial court's order dated November 17, 1988. However, Respondent has not raised this as an issue. His community corrections officer, in a report dated December 28, 1989, recommended further tolling of Respondent's community service by 2 months. This would reach October 4, 1989. There is no record in the file of an order to that effect.

[12]Urinalysis.

[13]Clerk's Papers, at 12.

to do so; [and] [12] Being in possession of drug paraphernalia in Missoula, Montana on or about 12-20-89.[14]

On February 22, 1990, after a hearing, the trial court determined that Respondent had committed violations 1 and 2, but that he did not commit violation 3.[15] Respondent admitted violations 4, 5, 6, 7, 8, 9, 10 and 11. At that time both counsel and the court apparently construed the supplemental probation violation report as an amendment to the petition to modify the original sentence, thus resulting in 12 alleged violations. No finding was made on violation 12.

The State of Washington (Petitioner) recommended 60 days for each violation. Respondent McDougal objected, asserting that the State unfairly accumulated violations over a period of months to achieve a sentence totaling 600 days in prison which was grossly disproportionate to the standard range of 0 to 90 days for the underlying felony.[16] The court ordered Respondent to serve 45 days in the Department of Corrections for each violation, to be served consecutively, for a total of 450 days.[17] In its oral decision, the court observed:

> He [Respondent McDougal] hasn't been available to be supervised and he's refused efforts that have been extended to him to have a rehabilitative treatment. In other words, he's refused to have a drug program, enter in and follow through with it. Therefore, the general purposes of the Sentencing Reform Act have to be examined if we are not going to secure any kind of rehabilitation because of his refusal.[18]

On March 16, 1990, Respondent McDougal filed a notice of appeal. The appeal was filed in the Court of Appeals, Division Three, on August 16, 1990. On July 11, 1991, the opinion of the Court of Appeals (Shields, J.) was filed. It

---

[14]Clerk's Papers, at 8.

[15]Clerk's Papers, at 6-7.

[16]Report of Proceedings, at 43.

[17]Clerk's Papers, at 6-7.

[18]Report of Proceedings, at 50.

vacated the order of the Superior Court modifying Respondent's sentence and remanded the case for resentencing.[19]

On November 6, 1991, this court granted the State's petition for review. The Washington Association of Prosecuting Attorneys filed a brief amicus curiae in support of the Petitioner. The Washington Association of Criminal Defense Lawyers filed a brief amicus curiae in support of the Respondent.

Petitioner argues that RCW 9.94A.200(1) and (2), authorizing a maximum 60-day penalty for each violation of a condition of a sentence, are clear and unambiguous.[20] Petitioner further contends that the statute complies with due process requirements and that "there is nothing 'exceptional' about sentences of up to 60 days per violation."[21]

Respondent McDougal argues that RCW 9.94A.200 should be interpreted as authorizing only 60 days' confinement for each violation *proceeding* because the statute is ambiguous and should be interpreted in favor of the defendant.[22] He contends that this interpretation advances the legislative purpose of the SRA and that a contrary interpretation would violate "other substantive policies and provisions of the SRA."[23]

Respondent asserts that if RCW 9.94A.200 is interpreted to allow the imposition of consecutive 60-day penalties in one proceeding, then such penalties may not exceed the offender's underlying standard range.[24] He further claims that if the statute is interpreted to allow the "imposition of consecutive 60 day penalties in one proceeding, then such

---

[19]*State v. McDougal*, 61 Wn. App. 847, 858, 812 P.2d 877 (1991).

[20]Supplemental Brief of Petitioner, at 3.

[21]Brief of Respondent (Petitioner in this court), at 8.

[22]Brief of Appellant (Respondent in this court), at 24.

[23]Brief of Appellant (Respondent in this court), at 24.

[24]Brief of Appellant (Respondent in this court), at 33.

penalties may not . . . exceed 12 months", and the term of confinement should not be "ordered served in a state prison."[25]

Respondent also claims that if the statute is determined to be clear and unambiguous, then it violates the due process provisions of the United States Constitution.[26] Additionally, he asserts that if the statute is not "invalidated", then imposition by the trial court of a sentence of 450 days' confinement is an abuse of discretion.[27]

The Washington Association of Prosecuting Attorneys in its brief amicus curiae underscores claims made by Petitioner State.[28]

The Washington Association of Criminal Defense Lawyers in its brief amicus curiae recites claims made by Respondent and also argues that a literal interpretation of the statute "defeats the goal of proportionality",[29] citing RCW 9.94A.010 which provides that the purpose of the SRA is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history" and that punishment should "[b]e commensurate with the punishment imposed on others committing similar offenses".

### First-Time Offender Status

Respondent was required to comply with specific conditions of his sentence. He maintains that he was not sentenced as a first-time offender; thus, the sentencing court

---

[25]Brief of Appellant (Respondent in this court), at 36 (citing RCW 9.94A.190 providing for place of confinement for sentences of more than 1 year or less than 1 year).

[26]Brief of Appellant (Respondent in this court), at 39.

[27]Brief of Appellant (Respondent in this court), at 46 (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[28]Brief of Amicus Curiae Washington Association of Prosecuting Attorneys.

[29]Brief of Amicus Curiae Washington Association of Criminal Defense Lawyers, at 6.

could "only have imposed 'crime related prohibitions' against him and could not impose a condition directing that he 'affirmatively participate in rehabilitative programs or otherwise perform affirmative conduct.' "[30]

At the time of Respondent McDougal's sentence on February 22, 1990, RCW 9.94A.030(17)(a) defined a "first-time offender" as follows:

"First-time offender" means any person who is convicted of a felony (i) not classified as a violent offense or a sex offense under this chapter, or (ii) that is not the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance classified in schedule I or II that is a narcotic drug, and except as provided in (b) of this subsection, who previously has never been convicted of a felony in this state, federal court, or another state, and who has never participated in a program of deferred prosecution for a felony offense.

The record indicates that when the judgment and sentence was entered on December 3, 1987, Respondent McDougal had no prior felony convictions. There is nothing in the record to indicate that he had participated in a program of deferred prosecution for a felony offense.[31]

Sentences imposed for first-time offenders under RCW 9.94A.030 are similar, but not identical, to those imposed under prior statutes as conditions of deferred or suspended sentences.[32] As one of six requirements, a first-time offender may be ordered to undergo available outpatient treatment or inpatient treatment not to exceed the standard range of confinement for the offense.[33] The authority of superior courts to defer or suspend sentences was abolished by RCW 9.94A.130, effective July 1, 1984, except for offenders sentenced under the special sexual offender alternative under former RCW 9.94A.120(7)(a).

---

[30]Brief of Appellant (Respondent in this court), at 46. See Clerk's Papers, at 6, 7, 20, 21.

[31]Clerk's Papers, at 20.

[32]D. Boerner, *Sentencing in Washington* § 7.7, at 7-9 (1985).

[33]D. Boerner § 7.7(3)(b), at 7-9.

Professor David Boerner in his treatise notes that in "creating the first-time offender option," the Legislature retained the concept of a rehabilitative ideal, "albeit in a modified form." He states that:

> To the extent that the first-time offender option is intended to continue the rehabilitative philosophy, it would be consistent to carry over all aspects of that philosophy where not expressly rejected. While the Act significantly reduces the size of the sanction available to the judge, its basic intent to retain a rehabilitative orientation for first-time offenders is clear.[34]

RCW 69.50.401, under which Respondent McDougal was charged, provides, in relevant part, that:

> (a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
> (1) Any person who violates this subsection with respect to:
> (i) a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or (A) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (B) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms and not more than fifty dollars for each gram in excess of two kilograms, or both such imprisonment and fine;
> (ii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both . . ..[35]

The "judgment and sentence" indicated that the maximum penalty for the crime was 5 years. Instead of imposing the 10-year maximum sentence specified under RCW 69.50-.401(a)(1)(i), the trial court imposed the 5-year maximum sentence specified under RCW 69.50.401(a)(1)(ii). Although no reference was made to the first-time offender statute, this is consistent with its application.

---

[34](Footnote omitted.) D. Boerner § 7.8(b), at 7-12.

[35]RCW 69.50.401(a)(1)(i), (ii). Cocaine is classified as a schedule 2 narcotic drug under RCW 69.50.206(b)(5). Although Respondent was charged merely with possession of a controlled substance and not with intent to manufacture or deliver, RCW 69.50.401 was cited in the information for his alleged violation.

## AMBIGUITY OF RCW 9.94A.200(2)(b)

Petitioner State argues that RCW 9.94A.200 is "incapable of meaning anything other than what it says on its face" and that the Court of Appeals "had no authority, through statutory construction, to rewrite the statute. . . ."

Former RCW 9.94A.200(1) and (2)(b), applicable to this case, provided that:

> (1) If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section.
>
> (2) If an offender fails to comply with any of the requirements or conditions of a sentence the following provisions apply:
>
> . . . .
> (b) . . . If the court finds that the violation has occurred, it may *order the offender to be confined for a period not to exceed sixty days for each violation*, and may (i) convert a term of partial confinement to total confinement, . . .. Any time served in confinement awaiting a hearing on noncompliance shall be credited against any confinement order by the court . . ..[36]

(Italics ours.)

In *State v. Taplin*, 55 Wn. App. 668, 779 P.2d 1151 (1989) the Court of Appeals, Division One, in a per curiam opinion concluded that "RCW 9.94A.200 is not ambiguous."[37] Yet, in the same case the court also stated that "at best, RCW 9.94A.200 is ambiguous."[38] The court then concluded that the rule of lenity requires that in a criminal case any ambi-

---

[36]Since July 1, 1990 (after the sentencing date in this case), RCW 9.94A.200-(2)(b), as amended, still in language identical to its predecessor, provides:

"The state has the burden of showing noncompliance [with any requirements or conditions of a sentence] by a preponderance of the evidence. If the court finds that the violation has occurred, it may *order the offender to be confined for a period not to exceed sixty days for each violation,* and may (i) convert a term of partial confinement to total confinement, (ii) convert community service obligation to total or partial confinement, or (iii) convert monetary obligations, except restitution and the crime victim penalty assessment, to community service hours at the rate of the state minimum wage as established in RCW 49.46.020 for each hour of community service. Any time served in confinement awaiting a hearing on noncompliance shall be credited against any confinement order by the court . . .." (Italics ours.)

[37]*Taplin*, at 670.

[38]*Taplin*, at 671.

guity in a statute must be resolved in favor of the defendant.[39] *Taplin* aids neither party in this case.

This court in *State v. Shove*[40] commented briefly on RCW 9.94A.200(2)(b), and while not specifically addressing extension of duration of an offender's commitment, stated that:

> The SRA permits modification of sentences only in specific, carefully delineated circumstances. . . . Authority for increasing an offender's duration of commitment, for example, is provided by RCW 9.94A.200(2)(b).[41]

■ Application of the statute, RCW 9.94A.200(2)(b), in this case, because of the harsh result reached, at least suggests an ambiguity. We thus look to legislative history for clarification.

The Legislature in bills before it in 1984[42] and in 1988[43] did not change the language of RCW 9.94A.200(2)(b) imposing a period "not to exceed sixty days for each violation" of the conditions of supervision. During legislative committee hearings, the Washington Association of Prosecuting Attorneys filed a paper entitled "Justice in Sentencing", suggesting more flexibility at the community supervision/jail level.[44] Additionally, counsel for the Senate Judiciary Committee made this recommendation for wording of the statutory provision:

> (5) Violations of Sentence Requirements (section 19): *An offender who fails to comply with or violates a condition or*

---

[39]*Taplin*, at 671. *See also State ex rel. McDonald v. Whatcom Cy. Dist. Court*, 92 Wn.2d 35, 37-38, 593 P.2d 546 (1979) (citing *State v. Grant*, 89 Wn.2d 678, 575 P.2d 210 (1978); *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976); *Seattle v. Green*, 51 Wn.2d 871, 322 P.2d 842 (1958); *State v. Thompson*, 38 Wn.2d 774, 232 P.2d 87 (1951)).

[40]113 Wn.2d 83, 86, 776 P.2d 132 (1989).

[41](Citation omitted.) *Shove*, at 86.

[42]2SHB 440, 48th Legislature (1984).

[43]SHB 1429, 50th Legislature (1988).

[44]From Washington State Archives documents on legislative history of the Sentencing Reform Act of 1981.

*requirement of a sentencing order may be confined for a sixty day period for each violation if the court finds by a preponderance of the evidence that the violation was wilful.* If the court finds the noncompliance was not wilful, the court may make adjustments in the terms of the sentence regarding the payment of the fine or restitution, or the performance of community service.[45]

(Italics ours.)

The language in that recommendation is quite similar to and consistent with the language in RCW 9.94A.200(2)(b). The recommendation uses the words "may be confined for a sixty day period for each violation". The statute uses the words "to be confined for a period not to exceed sixty days for each violation".

Professor Boerner, in discussing noncompliance with requirements or conditions of sentence,[46] explains that:

[I]mposing punishment for noncompliance with the requirements or conditions of a sentence is akin to a prosecution for the crime of criminal contempt, thus deserving of the full panoply of procedural protections required at trial. This argument overlooks the fundamental distinction between the conviction of a crime, which involves both the potential exposure to loss of liberty and the certain loss of status, and post-sentence proceedings, which involve only the issue of the degree of loss of liberty which should result. The courts have consistently relied upon this distinction in determining what procedural protections are constitutionally necessary. . . . Violation of a condition or requirement of a sentence is not an element of any crime, and its existence does not subject the offender to the loss of status inherent in the conviction of a crime. It never results in the mandatory imposition of punishment, nor does it restrict the discretion of the sentencing judge not to punish at all.

. . . The legislative purpose for granting judicial authority to impose limited punishment upon those who fail to comply with the conditions and requirements of sentences imposed upon them is clearly to empower judges to enforce the sentences they have imposed. Its purpose is remedial, not punitive. While the effect on the defendant will be punitive as well as coercive, it is the primary purpose which is determinative. . . .

---

[45]Memorandum to the Senate Judiciary Committee from Tina Boothman, counsel (re SHB 440, enacting the sentencing reform act (Apr. 3, 1981)).

[46]D. Boerner § 10.14, at 10-14 through 10-15.

> The full panoply of procedural protections necessary at a criminal trial has never been held necessary in civil contempt proceedings, and there is no reason to believe they will be required in violation proceedings under the Sentencing Reform Act.

(Footnotes omitted.)

In another sentencing context, the Legislature in 1986 in the Juvenile Justice Act of 1977 limited the number of days for violations proved at each hearing by amending RCW 13.40.200(3)(a). Prior to the amendment, the statute did not contain a provision for multiple violations.[47] It now states that "[p]enalties for multiple violations occurring prior to the hearing shall not be aggregated to exceed thirty days' confinement." The SRA contains no such limitation, either in RCW 9.94A.200(2)(b) or in the parallel provision governing violations of conditions of postsupervision release, RCW 9.94A.175. This latter provision requires the court to hold a hearing in the same manner as provided in RCW 9.94A.200 to determine whether the alleged violation occurred. RCW 9.94A.175 provides that: "[a]fter the hearing, the court may order the offender *to be confined for up to sixty days per violation* in the county jail. . . ." (Italics ours.)

■ The provisions of both RCW 9.94A.200 (the court "may order the offender to be confined for a period not to exceed sixty days for each violation") and RCW 9.94A.175 (the court "may order the offender to be confined for up to sixty days per violation in the county jail") are consistent and use almost identical language. This suggests only one interpretation: the Legislature intended that the 60-day penalty limitation apply to each violation proved.

In this case, after determining sentencing violations, the trial court imposed a sentence of 450 days, which exceeded the 1-year limit on confinement in the county jail under RCW 9.94A.190(1). The "order modifying sentence/revoking sentence/order of confinement/warrant confinement" signed

---

[47]Laws of 1986, ch. 288, § 5(3)(a), p. 1249; RCW 13.40.200.

by Judge Stephen M. Brown on February 22, 1990, provided, in part:[48]

> The court FINDS that:
>
> 2.1 The defendant has (violated) (failed to comply with) the requirements or conditions of sentence as follows:
>
> [X] Failing to report to the Department of Corrections.
>
> . . . .
>
> [X] Using illegal drugs (. . . [x] marijuana) on or about 3/89 & 4/89.
>
> [X] Changing residence without notifying the Department of Corrections.
>
> [X] Using Darvon 5/12/89 & 5/31/89[.]
>
> [X] failing to report for UA 6/9/89, 6/23/89, & 7/14/89[.]
>
> [X] Leaving State of Wash 12-20-90[.]
>
> 2.2 [ ] The violation of the requirements or conditions of sentence by the defendant was:
>
>     [X] Willful.
>
> . . . .
>
> DEFENDANT SHALL BE CONFINED AS FOLLOWS:
>
> 1. 450 days of total confinement in the ~~Yakima County Jail~~ <u>State Dept of Corrections</u>, to commence 2-22-90 at 8:00 a.m.
>
> . . . .
>
> [X] CREDIT is given for 55 days served.
>
> [X] Defendant shall be given credit for good behavior.

It is apparent from the order signed by the trial court that the court deliberately sentenced Respondent McDougal to confinement in the State Department of Corrections instead of in the Yakima County Jail. This is consistent with RCW 9.94A.190(1).

After determining that Respondent McDougal had violated the conditions of his sentence in 10 specific instances, the court modified Respondent's original sentence and ordered his confinement to the Department of Corrections for 450 days, representing 10 sentences of 45 days each, to be served consecutively.[49] In the report of proceedings of the sentence violation hearing on February 22, 1990, the trial court, after asking for Respondent's plea to each specified

---

[48]Clerk's Papers, at 6-7.

[49]Report of Proceedings, at 31-33, 42.

violation, at which time Respondent admitted to only nine violations, stated:[50]

> [T]his Court finds that there are admissions to Counts 4, 5, 6, 7, 8, 10 and 11. The Court finds violations in case of No. 1 and No. 2, but will not find a violation for No. 3. That is 10 matters.

It is apparent from the report of proceedings that the Respondent pleaded "guilty" to only nine violations and the trial court incorrectly calculated the number of violations of sentence conditions. The total number of violations found was 9 and not 10.[51] With the court-imposed penalty of 45 days for each violation, the total would be 405 days instead of 450 days. However, the order signed by the court on February 22, 1990, enumerated 10 specific violations found by the court. The order is controlling on the number of violations.

### ABSURD RESULT AND REASONABLE INTERPRETATION

■■ In resorting to statutory interpretation, this court first looks to the plain meaning of words used in a statute.[52] A nontechnical statutory term may be given its dictionary meaning.[53] Statutes should be construed to effect their purpose. Unlikely, absurd or strained consequences resulting from a literal reading should be avoided.[54] A literal interpretation of former and current RCW 9.94A.200(2)(b) can lead to a result, as occurred in this case, where an offender, after violation of sentencing conditions, may receive a sentence greatly in excess of the offender's allowable sentence in the upper range under the SRA.

---

[50]Report of Proceedings, at 31-33, 42.

[51]Report of Proceedings, at 31-33, 42.

[52]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[53]*Fjermestad*, at 835 (citing *State v. Olson*, 47 Wn. App. 514, 516-17, 735 P.2d 1362 (1987)).

[54]*Fjermestad*, at 835 (citing *State v. Stannard*, 109 Wn.2d 29, 742 P.2d 1244 (1987)). *See also State v. Keller*, 98 Wn.2d 725, 728, 657 P.2d 1384 (1983).

It seems apparent that the Legislature intended this result since the language "confined for a period not to exceed sixty days for each violation" was retained through several revisions of RCW 9.94A.200. A reading of RCW 9.94A.200(2)(b) alone does not suggest an ambiguity. The next step, then, leads to statutory interpretation because the result achieved might initially be considered "unjust and absurd".

*Sutherland Statutory Construction* provides some advice on this point:

> It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. It is a "well established principle of statutory interpretation that the law favors rational and sensible construction." It is fundamental, however, that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question.[55]
>
> One who questions the application of the plain meaning rule to a provision of an act must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning. If the language is plain, unambiguous and uncontrolled by other parts of the act or other acts upon the same subject the court cannot give it a different meaning. . . .
>
> However, there is authority for applying the plain meaning rule even though it produces a harsh or unjust result or a mistaken policy as long as the result is not absurd. . . . The words should be given their common and approved usage. . . .[56]

■ Although RCW 9.94A.200(2)(b) is not ambiguous, the sentencing result in this case might arguably be considered "harsh, unjust and absurd". The Respondent's standard range sentence under the SRA was 0 to 90 days based on an offender score of 0, even though the maximum penalty for the offense was 5 years. The trial court, after the hearing on sentence

---

[55](Footnotes omitted.) 2A N. Singer, *Statutory Construction* § 45.12 (4th ed. 1984).

[56](Footnotes omitted.) 2A N. Singer § 46.01.

violations, ordered him to serve 45 days consecutively in the Department of Corrections for each of 10 violations, for a total of 450 days. Comparing the maximum of 90 days imposed for the underlying offense to the 450 days imposed for sentence violations, one reasonably could conclude that the result is harsh, unjust and absurd. But comparing the maximum of 5 years (60 months or 1,800 days) to the 450 days imposed, the result would not be harsh, unjust and absurd. By violating the terms of his sentence, the Respondent moved outside the initial protections of the SRA and subjected himself to other statutory penalties, including the maximum penalty for the underlying offense. "Statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided."[57] In this case, the trial court applied an unambiguous statute. The maximum sentence for Respondent's underlying offense was 5 years. Although the range calculated for Respondent under the SRA was 0 to 90 days, the court at the original sentencing conceivably might have imposed the maximum term of 5 years as an exceptional sentence. The court did not do so, but upon violation by Respondent of conditions of his sentence, the court could also have ordered confinement up to the maximum term of 5 years if the number of sentence violations at 60 days per violation had totaled 1,800 days. The trial court did not abuse its discretion in this case by imposing a total of 450 days for 10 violations at 45 days for each violation.

RCW 9.94A.200(2)(b) authorizes a 60-day term for each violation of a sentence condition. Respondent McDougal was found guilty of 10 violations. The court imposed 45 days for each violation. This results in a sentence of 450 days, which is not a harsh, unjust or absurd result because the maximum penalty for the underlying offense is 5 years, which totals 1,800 days.

[57]*State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987) (citing *State v. Richardson*, 81 Wn.2d 111, 499 P.2d 1264 (1972)).

We reverse the Court of Appeals and affirm the trial court.

BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — I dissent. The trial court abused its discretion when it imposed a 450-day prison term. McDougal committed a level 2 offense and his offender score at the time was 0. The standard range for his offense under the Sentencing Reform Act of 1981 (SRA) was only 0 to 90 days in jail. The majority ignores the legislative purposes behind the SRA in failing to find an abuse of discretion in this case. McDougal's 450-day sentence is contrary to the SRA's purpose of ensuring an offender's punishment is "proportionate to the seriousness of the offense and the offender's criminal history". RCW 9.94A.010(1). In affirming this sentence, the majority undermines the SRA's goal of ensuring punishment that is "commensurate with the punishment imposed on others committing similar offenses". RCW 9.94A-.010(3). McDougal's sentence is so excessive it is contrary to the SRA's purpose of "[p]romot[ing] respect for the law" because it does not "provid[e] punishment which is just". RCW 9.94A.010(2). Finally, the sentence of over 1 year in the state penitentiary is contrary to the SRA's purpose of "[m]ak-[ing] frugal use of the state's resources". RCW 9.94A.010(6). I would affirm the Court of Appeals because the trial court abused its discretion in this case.

When a defendant violates the terms and conditions of a sentence, the court "*may* order the offender to be confined for a period not to exceed sixty days for each violation . . .." (Italics mine.) RCW 9.94A.200(2)(b). This statute gives the trial court a *discretionary* range from 0 to 60 days for imposing additional time for each sentence violation. I agree the Court of Appeals erred in holding that this statute is ambiguous. However, a sentencing court's decision to impose additional time under this statute remains subject to abuse of

discretion review. A trial court abuses its discretion when its discretionary determination is "manifestly unreasonable". *In re Schuoler,* 106 Wn.2d 500, 512, 723 P.2d 1103 (1986) (quoting *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). A 450-day prison sentence is manifestly unreasonable in this case.

The Legislature designed the SRA to "[e]nsure that the punishment for a criminal offense is *proportionate to the seriousness of the offense and the offender's criminal history".* (Italics mine.) RCW 9.94A.010(1). McDougal's 450-day prison sentence is not proportionate to the seriousness of his level 2 offense or to his offender score of 0. A defendant with an offender score of 0 would face a 450-day standard range sentence only if he or she were found guilty of killing another with a car, burglarizing a home while armed with a deadly weapon, or molesting a 12-year-old child, all level 7 offenses. *See* RCW 9.94A.320 (vehicular homicide, first degree robbery and second degree child molestation). The Legislature has determined that McDougal's crime carries a seriousness level of only 2, not 7. His sentence, in all fairness, should reflect this fact.

The basic purpose behind the SRA is to structure, but not eliminate, trial court discretion in sentencing matters. RCW 9.94A.010(1). To further this purpose, the court has "always interpreted the SRA in a manner that ensures the structuring of trial court discretion". *State v. Shove,* 113 Wn.2d 83, 89, 776 P.2d 132 (1989). The majority ignores this principle in finding no abuse of discretion in this case. Under the majority's holding, a sentencing court could add anywhere from 0 to 600 days, a range of 20 months, to the defendant's sentence without abusing its discretion. The maximum disparity allowed between the top and bottom of the standard range for committing a level 2 offense is only 14 months, and this 14-month disparity is reserved *only* for persons with offender scores of 9 or more. RCW 9.94A.310. The SRA was designed to structure trial court discretion in sentencing matters in order to make the criminal justice system

accountable to the public. RCW 9.94A.010. The 20-month disparity the majority allows in this case frustrates this purpose. Nothing in the SRA indicates a trial court's *structured* discretion under the SRA suddenly becomes *unstructured* when a defendant violates the terms and conditions of his or her original sentence.

Moreover, this 20-month range of unstructured discretion undermines the SRA's goal of imposing punishment "commensurate with the punishment imposed on others committing similar offenses". RCW 9.94A.010(3). Under the majority's holding, a defendant similarly situated with McDougal could receive anywhere from 0 to 450 to 600 days of incarceration. Similarly situated defendants could thus receive vastly unequal terms of punishment pursuant to the majority's broad grant of unstructured discretion in this case.

The majority also affirms the 450-day sentence contrary to the SRA's purpose of "[m]ak[ing] frugal use of the state's resources". RCW 9.94A.010(6). The Legislature determined McDougal's original offense merited a sentence of 0 to 90 days in the county jail. A sentence of 0 to 90 days constitutes an appropriate and frugal use of the state's resources. A sentence of 450 days in the state penitentiary does not. McDougal committed no *new* crime under the laws of this state. His violations were all technical in nature. These violations do merit additional incarceration. However, a 450-day prison sentence in this case is a poor use of the State's resources. These prison resources are better spent on criminals who, because of the seriousness of their crimes and their criminal histories, merit legislatively determined sentences of 1 year or more. These resources are wasted in this case.

The Sentencing Guidelines Commission noted:

Although the legislature has not adopted specific guidelines for the length of sanctions for various violations, the imposition of sanctions should be evaluated with reference to the standard range of the original offense. *Rarely should the time to be served for violations exceed the underlying standard range.*

(Italics mine.) Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.200 comment, at II-39 (1990). I agree with the Court of Appeals that this comment should guide our application of RCW 9.94A.200. *See State v. McDougal*, 61 Wn. App. 847, 854, 812 P.2d 877 (1991). However, it is also important to recognize that under certain circumstances, a defendant's sentence should logically be modified to exceed his or her standard range. For example, a defendant should not be able to violate the terms and conditions of a sentence without the possibility of facing additional time just because the trial court originally imposed a sentence at the top of the standard range. Moreover, a defendant such as McDougal should not be free to commit repeated violations of the terms of his sentence once the top of the standard range has been imposed in his case. Concerns such as these necessitate flexibility and discretion in modifying sentences pursuant to RCW 9.94A.200(2)(b). However, this discretion remains *structured* pursuant to the legislative purposes behind the SRA. *See* RCW 9.94A.010.

I would affirm the Court of Appeals because the trial court in this case abused its discretion. This case should be remanded for resentencing. Upon remand, I would require the sentencing court to impose a sentence that is proportionate both to McDougal's crime and to his offender score of 0. Such a sentence would "provid[e] punishment which is just" and would comply with the SRA's purpose of "[m]ak[ing] frugal use of the state's resources". *See* RCW 9.94A.010(2), (6). McDougal's 450-day sentence in the state penitentiary is both unjust and a waste of the State's resources. I accordingly dissent.

DORE, C.J., and UTTER, J., concur with JOHNSON, J.

Reconsideration denied February 10, 1993.