170 P.3d 60 (2007)
STATE of Washington, Respondent,
v.
Mitchell PARTEE, Appellant.
No. 34742-3-II.
Court of Appeals of Washington, Division 2.
October 23, 2007.
Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Lori Ellen Smith, Lewis Co. Prosecuting Atty. Office, Chehalis, WA, for Respondent.
HUNT, J.
¶ 1 Mitchell Partee appeals the sentencing court's revocation of his Special Sex Offender Sentencing Alternative (SSOSA) based on his stipulated violations. He argues that the sentencing court erred in revoking his SSOSA based on its incorrect belief that it had no other option, such as leaving his SSOSA intact and imposing probation violation sanctions under RCW 9.94A.634. We remand to permit the sentencing court to exercise its discretion in deciding whether to continue with its previous revocation of Partee's SSOSA or to impose consecutive sanctions of up to 60 days confinement for each violation of his SSOSA probation conditions, with credit for time served.[1]

FACTS
¶ 2 Based on Mitchell Partee's guilty pleas, in May 2003, the trial court sentenced Partee to 131 months for second degree child rape and 42 months for second degree child molestation, to run concurrently. Imposing a SSOSA, the trial court suspended all but 180 days of confinement on the following conditions: (1) no contact with children without *61 prior approval from a community corrections officer (CCO); (2) completion of sexual deviancy treatment; and (3) submission to regular polygraph tests.
¶ 3 In December 2004, Partee violated his SSOSA conditions by failing to attend treatment sessions. Partee's treatment provider and his CCO recommended that Partee continue in the SSOSA program. Without imposing sanctions, the trial court noted the violation and continued Partee's SSOSA.
¶ 4 Subsequently, Partee committed additional violations of his SSOSA conditions. In December 2005, the State petitioned the trial court to revoke Partee's SSOSA. In the petition, the State alleged two violations: (1) "The defendant admitted having unapproved/unreported contact with minors on no less than eight occasions, specifically on or about October 29, 2005, and November 16, 2005 . . ."; and (2) "[t]he defendant failed a polygraph by being deceptive on or about November 21, 2005," Clerk's Papers (CP) at 24, based on Partee's CCO's report that during a polygraph, Partee had lied about the extent of his contact with minors.
¶ 5 At the March 2006 SSOSA revocation hearing, Partee's sexual offender treatment provider, Robert Macy, testified that (1) Partee admitted having consumed alcohol; (2) Partee admitted having unapproved contact with two minors, the younger brother and sister of Partee's girlfriend, on more than one occasion; (3) Partee had a deceptive polygraph; and (4) he (Macy) had terminated Partee from treatment because he believed Partee was not amenable to treatment and presented safety issues to the community. Partee's treatment provider recommended revoking Partee's SSOSA.
¶ 6 Partee stipulated that he had violated the SSOSA conditions as the State alleged. He called Brian Cobb, a certified sex offender treatment provider who owned a private treatment practice, separate from Macy's. Cobb had interviewed Partee and had reviewed Partee's treatment and DOC records, but he had not treated Partee. Cobb testified that (1) he had "a great deal of respect for Mr. Macy and his recommendations," and (2) he (Cobb) was not willing to treat Partee at that time because Partee was not amenable to treatment. Report of Proceedings (RP) (March 17, 2006) at 27.
¶ 7 Cobb recommended that Partee serve a substantial period of confinement in the Department of Corrections (DOC) before going back into treatment to continue his SSOSA. Cobb reasoned that because spending time in DOC was different than spending time in jail, it would provide a shock experience that might make Partee amenable to treatment. Cobb suggested that, instead of revoking Partee's SSOSA, the sentencing court could impose some of Partee's suspended confinement time so that Partee could continue treatment thereafter. Partee similarly requested that the sentencing "court impose confinement of up to 600 days (60 days for each of the 10 violations) rather than revok[e] the SSOSA entirely." Br. of App. at 4 (citing RP (March 17, 2006) at 34-35).
¶ 8 The sentencing court found that Partee had been terminated from sex offender treatment for unsatisfactory progress and that he "ha[d] violated the terms of his suspended sentence[.]" CP at 22. The sentencing court stated that it "lack[ed] the authority to revoke only a portion of the remaining suspended sentence as suggest[ed] by counsel and the defendant's expert," and it lacked "the authority to `stack' probation violation [sic] to give the defendant time in D.O.C. as recommended by defendant's counsel and the defendant's expert. . . ." CP at 22. The sentencing court then revoked Partee's SSOSA and imposed the remainder of his 131-month sentence, with credit for time served.
¶ 9 Partee appeals his SSOSA revocation.

ANALYSIS

I. SSOSA Violation Sanctions
¶ 10 This case involves an issue of first impression for Division Two: When a person sentenced under SSOSA has violated sentencing conditions, for which the sentencing court will impose sanctions, is revocation of the SSOSA the court's only option or can it impose up to 60 days confinement per violation under RCW 9.94A.634(3)(c)? We hold that SSOSA revocation is not the only option available to the sentencing court; instead, *62 confinement under the probation violation statute, RCW 9.94A.634(3)(c), is also an option.
¶ 11 RCW 9.94A.634 provides, in pertinent part:
(1) If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section.
. . . .
(3) If an offender fails to comply with any of the requirements or conditions of a sentence the following provisions apply:
. . . .
(c) The state has the burden of showing noncompliance by a preponderance of the evidence. If the court finds that the violation has occurred, it may order the offender to be confined for a period not to exceed sixty days for each violation, and may (i) convert a term of partial confinement to total confinement, (ii) convert community restitution obligation to total or partial confinement, (iii) convert monetary obligations, except restitution and the crime victim penalty assessment, to community restitution hours at the rate of the state minimum wage as established in RCW 49.46.020 for each hour of community restitution, or (iv) order one or more of the penalties authorized in (a)(i) of this subsection. Any time served in confinement awaiting a hearing on noncompliance shall be credited against any confinement order by the court.

A. SSOSA Revocation; Other Sanctions
¶ 12 Partee argues that the trial court erroneously revoked his SSOSA based on its mistaken belief that it lacked authority to revoke only a portion of his suspended SSOSA sentence and to impose consecutive 60-day terms of confinement for multiple violations under RCW 9.94A.634(3)(c) for probation violations, in lieu of revoking his SSOSA. Although we disagree with Partee's assertion that the sentencing court had authority to revoke only a portion of his suspended SSOSA sentence, we do agree that the sentencing court had authority to impose consecutive 60-day terms of confinement for multiple violations under RCW 9.94A.634(3)(c) for probation violations, in lieu of revoking his SSOSA.

1. Standard of review
¶ 13 We review a trial court's decision to revoke a SSOSA suspended sentence for abuse of discretion. State v. Badger, 64 Wash.App. 904, 908, 827 P.2d 318 (1992). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds. State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003). A court may revoke an offender's SSOSA at any time if it is reasonably satisfied the offender violated a condition of the suspended sentence. State v. Dahl, 139 Wash.2d 678, 683, 990 P.2d 396 (1999); RCW 9.94A.670(10)(a) (formerly RCW 9.94A.120(8)(a)(vi)(A) (2000)). Here, Partee stipulated that he had violated conditions of his SSOSA suspended sentence; thus, we cannot say that the court abused its discretion in basing its revocation on this ground.
¶ 14 Nevertheless, it may be an abuse of discretion where, in selecting one particular sentencing option, the court erroneously believes that its alternatives are limited such that it fails to consider other legally available options. See Badger, 64 Wash.App. at 910, 827 P.2d 318. Whether a trial court has discretion to impose probation sanctions in lieu of revoking a SSOSA is a question of law, which we review de novo. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999); State v. Neeley, 113 Wash.App. 100, 106, 52 P.3d 539 (2002).

2. Discretion to impose confinement in lieu of SSOSA revocation
¶ 15 Although we have not yet addressed this issue in a published decision, Division Three of our court has consistently held that sentencing judges have discretion to sanction violation of a SSOSA condition either as a probation violation or by revoking the SSOSA. Badger, 64 Wash.App. at 910, 827 P.2d 318; State v. Daniels, 73 Wash.App. 734, 736-37, 871 P.2d 634 (1994); State v. Canfield, 120 Wash.App. 729, 733, 86 P.3d 806 (2004), reversed on other grounds, 154 *63 Wash.2d 698, 116 P.3d 391 (2005). We agree with Division Three's rationale in Badger and hereby adopt it for Division Two.
¶ 16 In Badger, "[t]he sentencing judge . . . expressed doubt about whether he had the option to impose up to a 60-day jail sentence (RCW 9.94A.200)[2] in lieu of executing the original sentence (RCW 9.94A.120(7))." 64 Wash.App. at 910, 827 P.2d 318. Because under former RCW 9.94A.200 the sentencing court could revoke the SSOSA or impose a jail term of up to 60 days per violation, Division Three remanded to permit the sentencing court to exercise its discretion. Badger, 64 Wash.App. at 910, 827 P.2d 318. Similarly, the sentencing court here apparently mistakenly believed that it lacked authority to impose up to 60 days of jail time for each probation violation in lieu of revoking Partee's SSOSA.
¶ 17 Adopting the reasoning and holding of Badger, we hold that the sentencing court had authority to impose probation violation sanctions under RCW 9.94A.634; therefore, SSOSA revocation was not the sentencing court's only option. Accordingly, we remand to the sentencing court to exercise its discretion in deciding whether to adhere to its previous revocation of Partee's SSOSA or to impose up to 60-days sanction for each violation of Partee's sentencing conditions. See Badger, 64 Wash.App. at 910, 827 P.2d 318.

B. Consecutive Confinement Sanctions
¶ 18 Partee next argues that the sentencing court similarly misconstrued its statutory discretion under RCW 9.94A.634(3)(c) when it found it lacked "the authority to `stack'[[3]] probation violation[s] to give the defendant time in D.O.C. as recommended by defendant's counsel and the defendant's expert." CP at 22. Partee further contends that, although the State enumerated only two violations, because the first violation included at least eight instances of unauthorized contact with a minor; therefore, it would have been possible for the trial court to have imposed at least nine (including the second violation) consecutive 60-day terms of confinement.
¶ 19 The State counters that Badger is distinguishable because the prosecutor in that case moved to revoke Badger's SSOSA alleging only one violation; and here, the State "alleged two violations: contact with minors, and failing a polygraph."[4] Br. of Resp. at 4. The State asserts that because "[t]he court is limited to rule on the allegations before him[,]" the "maximum penalty the court could have imposed [here] was 120 days, 60 per violation." Br. of Resp. at 4 (citing RCW 9.94A.634(3)(c)). We agree with the State.
¶ 20 In State v. McDougal, 120 Wash.2d 334, 348, 841 P.2d 1232 (1992), the Washington Supreme Court interpreted RCW 9.94A.200 and RCW 9.94A.175 to mean that the sentencing court may impose a 60-day penalty for each probation violation. But in McDougal, the State alleged and enumerated ten separate violations: that McDougal had used marijuana on three occasions, had used Darvon on two occasions, had failed to report for urine analysis three times, had moved to an unknown residence, and had failed to report to his CCO. McDougal, 120 Wash.2d at 339, 841 P.2d 1232. Based on these ten separate allegations, the sentencing court found ten violations of McDougal's probation conditions and imposed 45 days in the DOC for each violation, to be served consecutively, for a total of 450 days. Id. at 340, 350, 841 P.2d 1232.
¶ 21 But here, in contrast with McDougal, the State alleged only two sentencing condition violations; thus, it would not have been possible for the sentencing court to impose multiple consecutive 60-day terms sufficient for Partee to serve them in prison rather *64 than in jail. On the contrary, the most that the sentencing court could have imposed under RCW 9.94A.634(3)(c),[5] for Partee's two alleged violations, would have been two consecutive 60-day terms. That the first alleged violation comprised eight instances of disallowed conduct does not over-ride the prosecutor's discretion to choose what and how many charges to bring against a particular defendant from the array of many possibilities. See State v. Judge, 100 Wash.2d 706, 713, 675 P.2d 219 (1984) (prosecutors are vested with wide discretion in determining whether, and how, to charge suspects with criminal offenses).
¶ 22 To the extent that the sentencing court believed that it lacked authority to impose consecutive terms of confinement for SSOSA violations in lieu of revoking Partee's SSOSA, we remand for the trial court to reconsider its SSOSA revocation and to consider imposing consecutive terms of confinement under RCW 9.94A.634(3)(c) instead.[6]

II. Attorney Fees
¶ 23 Citing Blank,[7] RAP 14.2, RAP 14.3, and RCW 10.73.160, the State asks us to require Partee to pay all taxable costs of this appeal, "including the cost of the reproduction of briefs, verbatim transcripts, clerk's papers, filing fee, and the State's statutory attorney's fees." Br. of Resp. at 5. We deny this request. Although RCW 10.73.160(1) allows us to require Partee to pay appellate costs, RAP 14.2 allows an award of costs only to the party that substantially prevails on review. Here, Partee, not the State, prevails on appeal. Thus, the State is not entitled to an award of costs.
¶ 24 Accordingly, we remand to permit the sentencing court to exercise its discretion in deciding whether to retain its previous revocation of Partee's SSOSA or to impose consecutive sanctions of up to 60 days confinement for both violations of his SSOSA probation conditions, with credit for time served.
I concur: ARMSTRONG, P.J. concur.
QUINN-BRINTNALL, J. (dissenting).
¶ 25 Here, the trial court stated that it "lack[ed] the authority to revoke only a portion of the remaining suspended sentence as suggest[ed] by counsel and the defendant's expert," and it lacked "the authority to `stack' probation violation [sic] to give the defendant time in [Department of Corrections (DOC)] as recommended by defendant's expert." Clerk's Papers at 22.
¶ 26 I read this to mean that the court believed that it did not have the authority to acquiesce in Mitchell Allen Partee's request that he be sent to the DOC for 600 days to reform his attitude and then return to treatment with Brian Cobb. Because the trial court did not have such authority on this record, I respectfully dissent.
¶ 27 The State filed a petition to revoke Partee's special sex offender sentencing alternative (SSOSA). In its petition for revocation, the State charged two violations. Violation one alleged that Partee had violated the condition that he have no unapproved contact with minors and set out eight instances of contact. Violation two alleged that Partee had failed a polygraph by being deceptive about the extent of his contact with these minors. Partee contends that each of the separate factual events alleged in support of violation one was a separate violation for which a separate 60-day punishment could be imposed and, run consecutively, the trial court could order that he serve the resulting 600 days at DOC under RCW 9.94A.190. But Partee's premise is erroneous. The State only alleged two violations, not ten, and the *65 maximum confinement time for these violations was only 120 days. A trial court can only sentence a defendant for those crimes for which he was actually charged  not crimes for which he could have been charged. State v. Jacobson, 92 Wash.App. 958, 971, 965 P.2d 1140 (1998) (a sentencing court cannot impose an exceptional sentence based on facts that would establish element of a crime for which defendant was not charged), review denied, 137 Wash.2d 1033, 980 P.2d 1282 (1999). See also State v. Peterson, 133 Wash.2d 885, 889-90, 948 P.2d 381 (1997) (conviction for a crime not charged is only permissible when the conviction is for a lesser included offense or inferior degree of charged crime). Likewise, the trial court can only find a defendant violated a condition of his SSOSA after the State has notified him that it is charging him with such violation. Furthermore, because 120 days is less than one year, this time must be served in jail, not DOC. RCW 9.94A.190. Accordingly, the trial court's statement that it lacked authority to send Partee to DOC for violating the conditions of his SSOSA release was not erroneous.
¶ 28 Partee cites State v. Badger, 64 Wash. App. 904, 910, 827 P.2d 318 (1992), in support of his claim that, when reviewing a petition to revoke a SSOSA, the trial court has the authority to revoke all or a portion of the previously suspended sentence. Thus, he argues the trial court could have imposed 600 days of the previously suspended 131-month sentence and released him into the community treatment facility after he had served this time, crediting him with 600 days of time served. I disagree. A trial court dealing with probation violations may impose 60 days additional time for each violation proved or it may revoke the sentence previously suspended. But no authority is cited for the proposition that the court may revoke part of a previously suspended sentence and I have found none. Accordingly, the trial court's statement that it lacked authority to send Partee to DOC as requested was not erroneous.
¶ 29 I would affirm.
NOTES
[1] On remand, the sentencing court should both reconsider its SSOSA revocation and consider the probation violation option. At oral argument, defense counsel noted that by the time of this remand, Partee will have been in Department of Corrections (DOC) custody for a substantial period of time, comparable to the proposal the sentencing court previously believed it lacked authority to impose in lieu of SSOSA revocation.
[2] At the time of the Badger decision, former RCW 9.94A.200 was in effect. Its pertinent provisions are essentially identical to the current version of this former statute, now, RCW 9.94A.634.
[3] Courts sometimes refer to imposing consecutive jail time as "stacking." See State v. Edgley, 92 Wash.App. 478, 481-82, 966 P.2d 381 (1998).
[4] The State's petition to revoke Partee's SSOSA alleged that Partee committed two violations: (1) "The defendant admitted having unapproved/unreported contact with minors on no less than eight occasions, specifically on or about October 29, 2005, and November 16, 2005." (2) "The defendant failed a polygraph by being deceptive on or about November 21, 2005." CP at 24.
[5] Just as RCW 9.94A.200 provided, RCW 9.94A.634(3)(c) now provides: "If the court finds that [a sentencing condition] violation has occurred, it may order the offender to be confined for a period not to exceed sixty days for each violation."
[6] The sentencing court determined that Partee "violated the terms of his suspended sentence[,]" but it did not determine the number or character of the violations. CP at 22. If on remand the sentencing court decides not to revoke Partee's SSOSA and chooses instead to exercise its discretion under RCW 9.94A.634, it should specify the number and nature of the probation violations for which it imposes confinement sanctions.
[7] State v. Blank, 131 Wash.2d 230, 930 P.2d 1213 (1997).