FILED
COURT OF APPEALS
DIVISION II

2013 MAR 19 AM 8: 44

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43202-1-II |
| Respondent, | |
| v. | |
| FREDERICK ALEXANDER RIDDLE, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Frederick Alexander Riddle appeals the superior court's decision to revoke his special sex offender sentencing alternative (SSOSA), RCW 9.94A.670, suspended sentence. He argues that the revocation decision was not based on "verified facts" and, thus, should be reversed.[1] Br. of Appellant at 1, 5. We affirm.[2]

### FACTS

In December 2009, Riddle pleaded guilty to two counts of first degree rape of a child. His then 17-year-old daughter, D.R.R., was one of his victims. The trial court sentenced him to

---

[1] We treat Riddle's argument that "verified" facts did not support the superior court's decision as an argument that sufficient evidence did not support the trial court's revocation order.

[2] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

confinement of 131 months to life, but suspended imposition of this sentence under RCW 9.94A.670.[4] The trial court's SSOSA sentence required that he serve 12 months confinement followed by lifetime community custody, during which he was required to comply with the conditions the trial court imposed. One of the conditions prohibited Riddle from contact with D.R.R. Riddle completed the 12 months of confinement and was released to community custody under the trial court's terms.

On January 24, 2012, the State filed a motion to revoke Riddle's SSOSA for violation of his community custody conditions. At the hearing on the State's motion, the State relied on multiple instances of unpermitted contact between D.R.R. and Riddle to revoke his community custody and return him to confinement for the duration of his original sentence of 131 months to life.

Shelley Feld, Riddle's community corrections officer, testified at the revocation hearing that Riddle never informed her that he had contact with D.R.R. She stated that had he provided her with this information, she would have noted it. Riddle did speak with Feld about going to his wife's home to make some repairs. Feld cautioned Riddle that he could not enter the home if a minor or a victim was present.[5] She recalled that she specifically asked Riddle during polygraph examinations whether he had contact with minors and that he denied such contact.

---

[4] RCW 9.94A.670 allows a sentencing court to suspend the sentence of a first-time sexual offender if the offender is shown to be amenable to treatment. *State v. Miller*, 159 Wn. App. 911, 917, 247 P.3d 457, *review denied*, 172 Wn.2d 1010 (2011).

[5] Riddle also spoke with Feld about the proper procedure for visitation with his children. She was working with Riddle to have his wife certified as a chaperone so he could see his youngest daughter, not D.R.R.

D.R.R. testified that she had approximately 10 contacts with Riddle while he was on community custody and that she had discussed the no-contact order with him. She stated that she had gone to Riddle's house to speak with him and that she had accompanied her mother to Riddle's house when her mother drove him to their home. During the drive, Riddle laid down in the back seat of the car so neighbors would not see him.

Alastair Fynn, Riddle's former roommate and a convicted sex offender, testified that Riddle called or texted him when D.R.R. or another daughter of his visited so Fynn would not violate terms of his own community custody. Fynn also recalled that Riddle told him about visiting D.R.R.'s home and hiding in the car.[6] Wesley Grunwald, a friend of Riddle's who was in Riddle's treatment group, visited Riddle's house multiple times in the summer of 2011 and observed Riddle and D.R.R. together two or three times.

During the prosecutor's argument that Riddle's SSOSA sentence should be revoked, he stated that Riddle was not honest with Feld, "[h]e never mentioned the fact he was having contact with his daughters . . . and he specifically passed polygraphs where he was asked about having contact with his daughters." Report of Proceedings (RP) at 71.

At the hearing, the superior court noted that at the original sentencing, it was a "close" call about whether to suspend Riddle's 131 months to life sentence because Riddle minimized his responsibility for what occurred and "actually [took] the remarkable step of blaming the victims for [his] conduct." RP at 85. The trial court stated that Riddle basically "disregarded [the court's requirements] in a most intentional matter of choice to do so." RP at 88.

---

[6] Feld learned from Fynn that Riddle had contact with D.R.R., investigated the allegations, and ultimately filed a notice of violation based on the contact. Fynn also testified that when Riddle learned that the State was investigating him, he expressed threats about what he would do when he learned the name of the person who reported his unsanctioned contact.

. The court's written findings of fact state that Riddle (1) had "personal contact with [D.R.R.] on numerous occasions," (2) hid when visiting D.R.R. at her home to avoid being seen, (3) knew that a condition of his SSOSA sentence was no contact with D.R.R., and (4) did not tell Feld of his contact with D.R.R. "even though [he was] asked about said contact in regular meetings." Clerk's Papers (CP) at 114-15. It concluded that because Riddle repeatedly violated a term of his SSOSA sentence, it was authorized to revoke the SSOSA under RCW 9.94A.670(11)(a).[7] It also concluded that revocation of his SSOSA sentence was appropriate because Riddle demonstrated that he could not be effectively monitored in the community setting. The superior court did not rely on the allegations related to Riddle's polygraph answers as basis to revoke his SSOSA sentence. Riddle appeals.

ANALYSIS

STANDARD OF REVIEW

We review a trial court's decision to revoke a SSOSA sentence for an abuse of discretion. *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457 (citing *State v. Partee*, 141 Wn. App. 355, 361, 170 P.3d 60 (2007)), *review denied*, 172 Wn.2d 1010 (2011). A trial court abuses its discretion only where the trial court's decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Miller*, 159 Wn. App. at 918 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). *See also State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001) (trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court).

---

[7] RCW 9.94A.670(11) provides,
> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence.

4

SSOSA REVOCATION

A SSOSA sentence may be revoked any time there is sufficient evidence to reasonably satisfy the trial court that a convicted felon has violated a condition of the suspended sentence or has failed to make satisfactory progress in treatment. *Miller*, 159 Wn. App. at 917-18 (citing *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); RCW 9.94A.670(10); former RCW 9.94A.120(8)(a)(iv) (1998)). When a SSOSA sentence is revoked, the original sentence is reinstated. *Miller*, 159 Wn. App. at 918; *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999).

Riddle argues that the superior court's conclusion that he can no longer be effectively monitored in the community setting was not supported by sufficient evidence because the record does not support a conclusion that Riddle lied during polygraph examinations about contact with D.R.R. since he was not asked about contact with D.R.R. during those examinations. Rather, he asserts that the record shows that Feld asked Riddle only whether he had contact with minors and that he did not lie to Feld because D.R.R. was 19 during the contact period.

Here, however, the superior court revoked Riddle's SSOSA sentence because he violated its terms of community custody by having multiple unpermitted contacts with D.R.R.

Thus, because RCW 9.94A.670(11)(a) allows the superior court to revoke Riddle's SSOSA suspended sentence based on the finding that he violated a term of his suspended sentence "on numerous occasions," CP at 114-15, we need not reach Riddle's argument that the record does not support a conclusion that he could no longer be effectively monitored in the community while under the community custody portion of his sentence.

5

No. 43202-1-II

We affirm the superior court's revocation of Riddle's SSOSA sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

WORSWICK, C.J.

JOHANSON, J.

6