FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42185-2-II |
| Respondent, | |
| v. | |
| STEVE DALE WHITCHER, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. – Steve Dale Whitcher appeals the superior court's revocation of his Special Sex Offender Sentencing Alternative (SSOSA). He argues that (1) the State violated his due process rights by failing to provide him with adequate notice of the grounds for revocation; (2) the reasons for which the superior court revoked his suspended sentence do not constitute grounds for revocation under the SSOSA statute, RCW 9.94A.670(11); and (3) he received ineffective assistance of counsel. In his Statement of Additional Grounds (SAG), Whitcher appears to assert that the superior court erroneously revoked his suspended sentence based on issues not relevant to his suspended sentence revocation, such as failure to maintain law abiding behavior when he was arrested for other offenses. We affirm.

No. 42185-2-II

# FACTS

## I. Imposition and Violation of SSOSA and Conditions

The superior court sentenced Steve Dale Whitcher to 131 months to life in prison for child rape and 89 months to life in prison for child molestation, to run concurrently. After finding Whitcher eligible for a SSOSA suspended sentence under RCW 9.94A.670, the superior court imposed 6 months of confinement and suspended the remaining 125 months, to be served in community custody, on condition that Whitcher (1) comply with all rules, regulations, and requirements of the Department of Corrections; (2) "[u]ndergo and *successfully complete*"[1] an outpatient sex offender treatment program; and (3) comply with all other conditions of his judgment and sentence, including the conditions listed in appendixes G and H. Appendixes G and H of Whitcher's judgment and sentence required that he (1) "attend and *complete* sexual deviancy treatment"[2] with Comte & Associates, (2) "follow all rules set forth by [his] treatment provider," (3) "[c]omply with all recommended treatment" of his treatment provider, (4) maintain law abiding behavior, and (5) not have any contact with his victim or any minor child without prior written authorization from his treatment provider and his community corrections officer (CCO). Clerk's Papers (CP) at 15, 18.

Whitcher's judgment and sentence also explained that the superior court could revoke his SSOSA at any time during his period of community custody if he violated the conditions of his suspended sentence or if the court found that he was failing to make satisfactory progress in his

---

[1] Clerk's Papers (CP) at 10 (emphasis added.)

[2] CP at 15 (emphasis added).

treatment. Represented by counsel, Whitcher signed his judgment and sentence, acknowledging that he understood the conditions of his SSOSA and suspended sentence.

After serving the confinement portion of his sentence, Whitcher was released to community custody and assigned to CCO Lynne Hudson. Hudson instructed Whitcher to attend sexual deviancy treatment with therapist Jeanglee Tracer, a therapist who had recently broken off from Comte & Associates.[3] Whitcher quickly became "very defiant," demanded to know Hudson's "qualifications" to supervise him, and stated that he did not want to go to treatment with Tracer. 1 Verbatim Report of Proceedings (VRP) at 13, 52. Over the next couple months, Whitcher continued to question Hudson's authority on "every little thing," and he argued with her several times about receiving treatment from Tracer. 1 VRP at 28.

Hudson eventually told Whitcher that his sexual deviancy treatment with Tracer was "not up for discussion." 1 VRP at 15. Whitcher responded that he felt "backed into a corner" and he did not think it "fair" that he had to attend treatment and had to "pay" for it. 1 VRP at 15. Joe Sofia, a neighboring CCO, overheard several of Whitcher's conversations with Hudson. According to Sofia, Whitcher's willingness to heed to authority was "nonexistent"; he was "defiant" and "disobedient to . . . Hudson . . . from day one." 1 VRP at 51, 53. When Sofia intervened, Whitcher tried to intimidate him by staring him down.

---

[3] According to Hudson, the SSOSA rules did not allow Comte & Associates to conduct Whitcher's treatment because the company had previously conducted his sexual deviancy evaluation. RCW 9.94A.670(13). Whitcher does not argue that his seeing Tracer was improper under the conditions of his judgment and sentence; therefore, we do not further consider this issue here.

3

Whitcher eventually began sexual deviancy treatment with Tracer, but his progress was "poor to say the least." 1 VRP at 27. At his first counseling session, Whitcher received a packet of Tracer's treatment rules, which prohibited him from lying, prohibited him from having contact with minors without prior approval, and required him to attend and to pay for all treatment at each session; Whitcher signed a written acknowledgment that he had read and understood these rules. Whitcher did not bring any money to pay for his first counseling session. Tracer reminded him that he was required to pay at each session. He missed his second counseling session because he was in jail for unrelated theft and criminal trespass charges.[4] He attended his third counseling session with Tracer, but he brought only a "minor" portion of his payment ($100 of the $375), and he continued to carry an account balance, contrary to Tracer's rules. 2 VRP at 65. Thereafter, Tracer placed Whitcher in group counseling sessions; Whitcher attended two sessions, but he did not participate in them. Whitcher was also terminated from the Department of Correction's Getting it Right program for "lack of attendance."[5] 1 VRP at 23.

During a visit to Whitcher's home, Hudson and fellow CCO Hilary Williams saw him seated at a computer. When they viewed the computer's cookies, they discovered that Whitcher had recently opened a Facebook account, which he had not previously disclosed, and that he had recently visited the site. The Facebook account was registered under the name "Eve Whitcher" (as opposed to Steve), and it featured a woman's profile picture. 1 VRP at 39. When Hudson and Williams asked about the suspicious Facebook account, Whitcher asserted that the name "Eve" was a typo; and he denied knowing that a female picture had become associated with the

---

[4] These charges were dismissed without prejudice and are not at issue in this appeal.

[5] The reasons for Whitcher's dismissal from this program are not at issue in this appeal.

account. 1 VRP at 41. During a later polygraph test, however, he admitted that he had intentionally posed as a woman on Facebook in order to meet men.

That same month, Whitcher's CCOs also learned that he had had contact with a minor, in violation of his SSOSA. Whitcher had attended his mother's birthday party at his sister's house, at which his 24 year-old niece was present with her infant child. Although Whitcher had no physical contact with the child, he did not immediately leave the party, as required by his SSOSA and Tracer's treatment rules.

Tracer learned that Whitcher had come into contact with a minor and that he had stayed in the room rather than leaving immediately, as required by her treatment rules. She also learned that he had violated her treatment rules by opening and using a Facebook account and that he had initially lied to his CCOs about it; she considered his lying and deception about the Facebook account "a great concern." 2 VRP at 70. Believing that Whitcher was not "amenable to treatment,"[6] Tracer terminated his treatment. 2 VRP at 85.

## II. PROCEDURE

The State petitioned for revocation of Whitcher's SSOSA, alleging four violations:

Violation I: Defendant has been terminated from the DOC Program Getting it Right due to lack of attendance as directed on 10/20/10[.]

Violation II: Failed to maintain law abiding behavior by being arrested on 10/29/2010 for Theft 3rd degree and Criminal Trespass 2nd [d]egree by Fife [Police Department] (Case #2010004109)[.]

---

[6] Tracer articulated the following reasons for this belief: (1) Whitcher had challenged her treatment rules early in her program, at a time when other participants were normally very cautious; (2) he had been "deceptive" about his use of Facebook and had refused to see his deception as a treatment issue; (3) he had continued to "play[ ] the victim" during treatment; and (4) he had refused to take responsibility for his actions. 2 VRP at 71.

> Violation III: Having contact with a minor [without] the permission of his therapist and his CCO on or about 12/18 or 12/19/2010.

> Violation IV: *Being terminated from sex offender treatment* on 12/23/2010[.]

CP at 25-26 (emphasis added).

At the revocation hearing, the State's witnesses testified to the facts set forth in the preceding section of this opinion. Whitcher testified that (1) he had misinterpreted when he was supposed to report to the Getting it Right program and, thus, had not intentionally missed a meeting; (2) his theft and criminal trespass charges were unfounded because he believed he had "permission" to take the property allegedly stolen; (3) he "never came within ten feet of the child" at his sister's house; and (4) he was willing to receive sexual deviancy treatment from Dr. Larry Arnholt, a therapist with whom he had briefly met. 3 VRP at 187, 189. Arnholt testified that Whitcher exhibited a "chronic pattern of psychological maladjustment," that his use of Facebook was a "significant concern," and that Whitcher was still a "viable candidate for SSOSA treatment." 4 VRP at 228, 230, 224.

The superior court ruled that Whitcher had violated the conditions of his suspended sentence based on *only* the fourth violation alleged in State's revocation petition—that Whitcher had been "terminated from [sex offender] treatment"[7]—and revoked Whitcher's SSOSA on this

---

[7] The superior court found that the fourth violation was "true." It agreed with Tracer's motivations for terminating Whitcher's treatment, namely that Whitcher was "not amenable to treatment," as evidenced by his deception in opening and using a Facebook account, his conduct during treatment, and his failing to heed to his CCOs' authority. 4 VRP at 267.

The superior court also ruled that (1) Whitcher had committed a "technical violation" of the first ground the State had alleged in its revocation petition (termination from the Getting It Right program), but it would not revoke his SSOSA on this ground; and (2) Whitcher had not committed the second and third violations because the State had not produced sufficient evidence to support these violations. 4 VRP at 256. These rulings are not at issue here.

ground. 4 VRP at 267. The superior court's written order also stated that Whitcher was "not amenable to treatment" and that he "pose[d] a danger to others," but it did not articulate these as grounds for revoking his SSOSA. CP at 93. Whitcher appeals.

ANALYSIS

I. NO DENIAL OF DUE PROCESS

Whitcher argues that his due process rights were violated because (1) the superior court revoked his SSOSA based on his "not being amenable to treatment and being a danger to others," and (2) the State did not provide him with adequate written notice that his suspended sentence could be revoked on these grounds. Br. of Appellant at 20. We review alleged due process violations de novo. *State v. Simpson*, 136 Wn. App. 812, 816, 150 P.3d 1167 (2007). We find no due process violations here.

A. Due Process for Revocation

A superior court may revoke a sex offender's SSOSA suspended sentence at any time if it is reasonably satisfied that the offender violated a condition of his suspended sentence or failed to make satisfactory progress in treatment. RCW 9.94A.670(11)[8]; *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). Because revocation of a suspended sentence is not a criminal proceeding, the due process rights afforded at a revocation hearing are not the same as those afforded at trial. *Dahl*, 139 Wn.2d at 683. An offender facing revocation of a suspended sentence has only "minimal" due process rights similar to the rights afforded to those facing revocation of probation or parole. *Dahl*, 139 Wn.2d at 683.

---

[8] Although the legislature amended this statute in 2009, the amendments did not affect this statutory provision.

Such minimal due process rights entail:

> (a) written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation.

*Dahl*, 139 Wn.2d at 683 (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). These requirements exist to ensure that the finding of a violation of a term of a suspended sentence will be based upon verified facts. *Dahl*, 139 Wn.2d at 683. Whitcher's minimal due process rights were not violated here.

## B. Adequate Notice

The State provided Whitcher with written notice that it would seek revocation of his SSOSA based on his having committed four violations of his suspended sentence; the fourth violation specially alleged that he had been "terminated from sex offender treatment." CP at 26. The State disclosed the evidence against Whitcher by giving him a copy of the "Court-Notice of Violation" form. CP at 29. The superior court then conducted a full revocation hearing, during which Whitcher had the opportunity to testify and to confront and to cross examine witnesses. And at the conclusion of this hearing, the superior court made an oral ruling and issued a written order, revoking Whitcher's SSOSA based on his being "terminated from sex offender treatment" and having committed "violation [number] 4" of the State's petition for a revocation hearing. CP at 26, 93.

## C. Superior Court's Grounds for Revocation

Whitcher nevertheless asserts that his due process rights were violated because the superior court's written order also stated that he was not "amenable to treatment" and was a

"danger to others," which grounds were not included in the State's revocation petition. Br. of Appellant at 20. This argument fails because it is based on a misunderstanding of the superior court's ruling.

The superior court's oral ruling and written order clearly stated that it revoked Whitcher's SSOSA based on his having committed *only* the fourth violation alleged in the State's revocation petition (i.e., that he had been terminated from sex offender treatment). Although the superior court also commented on Tracer's testimony that Whitcher was not amenable to treatment and her reason for terminating Whitcher's treatment, the superior court did not rely on Tracer's conclusion about Whitner's not being amenable to treatment as an independent SSOSA violation; rather, the court mentioned it as supporting the underlying violation that he had been terminated from treatment.[9]

We hold that (1) the State provided adequate written notice that it would seek revocation of Whitcher's SSOSA based on the fourth alleged violation—being terminated from sex offender treatment; (2) the superior court revoked Whitcher's SSOSA suspended sentence based on its finding that he had committed this fourth violation alleged in the State's notice for a revocation hearing; and (3) the superior court did not violate Whitcher's minimal due process rights by also revoking his SSOSA after finding a violation of this suspended sentence condition.

## II. NO ABUSE OF DISCRETION

Whitcher next argues that the superior court abused its discretion in revoking his SSOSA because RCW 9.94A.670(11) provides only two grounds under which a superior court may

---

[9] Similarly the superior court's statement that Whitcher posed a "danger to others" was not a ground on which it relied for revoking his SSOSA. CP at 93.

revoke a suspended sentence, neither of which were reasons the court used for his revocation. Whitcher misapprehends the ground on which the superior court revoked his SSOSA, and his argument fails.

We review a superior court's decision revoking a SSOSA for violations under an abuse of discretion standard. *State v. McCormick*, 166 Wn.2d 689, 705-06, 213 P.3d 32 (2009); *State v. Partee*, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). A superior court abuses its discretion if its decision is "'mainfestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *McCormick*, 166 Wn.2d at 706 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). RCW 9.94A.670(11) provides:

> The court may revoke the [SSOSA] suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender *violates the conditions of the suspended sentence*, or (b) the court finds that the offender is failing to make satisfactory progress in treatment.

(Emphasis added.) As we have already explained, Whitcher's SSOSA suspended sentence specifically required that he "attend and *complete* sexual deviancy treatment." CP at 15 (emphasis added).

Whitcher violated this condition of his suspended sentence when Tracer terminated him from treatment based on his (1) being deceptive about his use of Facebook, (2) breaking several of her treatment rules, and (3) failing to take responsibility for his actions and failing to participate in his treatment program in a meaningful way. The superior court orally ruled that the fourth alleged SSOSA violation—Whitcher's termination from sex offender treatment—was "true" and that it agreed with Tracer's reasons for terminating his treatment. 4 VRP at 267. The evidence supports the superior court's factual findings about Whitcher's

treatment termination.[10] We hold that the trial court did not abuse its discretion in ruling that Whitcher had violated the treatment-completion condition of his suspended sentence and in revoking his SSOSA on this ground under RCW 9.94A.670(11)(a).

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Last, Whitcher argues that he received ineffective assistance of counsel because his counsel did not ask the superior court to impose a lesser sanction of 60 days confinement in jail under RCW 9.94B.040(3)(c) instead of revoking his SSOSA. This argument fails.

To prove ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). To prove deficient performance, a defendant must overcome "'a strong presumption that counsel's performance was reasonable.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)), *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012).

---

[10] The case that Whitcher cites in his Statement of Additional Authority does not apply. In *State v. Peterson*, 69 Wn. App 143, 847 P.2d 538 (1993), Division Three of our court reversed the superior court's finding that Peterson had failed to comply with a condition of his community custody because (1) Peterson's community custody condition stated only that he would "participate in crime related treatment or counseling services" as directed by his CCO; (2) the specific treatment program that his CCO directed him to attend and the only program available in the area would not *accept* him, despite his having driven 60 miles for his first appointment; and (3) therefore, the superior court could not base its finding of "volitional" noncompliance on Peterson's "failure to comply" with the conditions of his community custody term under these circumstances (even though the program had partially refused Peterson admission based on his denial that he had a problem requiring treatment). *Peterson*, 69 Wn. App at 144-47.

Whitcher, in contrast, did enter the treatment program required by his CCO. But he failed to *complete* it and was terminated from the program for noncompliance with program rules and non participation, all *volitional* acts of noncompliance on his part.

To show prejudice, the defendant must establish that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862). A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

When a sex offender sentenced under a SSOSA violates conditions of his suspended sentence, the superior court has discretion to revoke the offender's suspended sentence or to impose confinement under RCW 9.94B.040[11], which governs probation violations. *Partree*, 141 Wn. App. at 360. We have held that a superior court has authority under RCW 9.94B.040(3)(c) to impose consecutive 60-day confinement terms for multiple probation violations in lieu of revoking a SSOSA. *Partree*, 141 Wn. App. at 361. Assuming, without deciding, that Whitcher's counsel was deficient in failing to request a 60-day confinement sanction instead of SSOSA revocation, Whitcher demonstrates no prejudice.

After considering all of the evidence, the superior court agreed with Tracer's assessment that Whitcher was "not amenable to [sex offender] treatment." 4 VRP at 267. The superior court specifically disagreed with Arnholt that Whitcher was still a good candidate for treatment; and, based on Whitcher's problems heeding authority, the court expressed doubt about whether a

---

[11] *Partree* cites RCW 9.94A.634 for this principle. But the legislature has since recodified RCW 9.94A.634 as RCW 9.94A.040. *See* LAWS OF 2008, ch. 231 § 56.

SSOSA had ever been appropriate for Whitcher.[12] Whitcher fails to establish a reasonable probability that the court would not have revoked his SSOSA even if his counsel requested the lesser sanction of 60 days in jail. Accordingly, his ineffective assistance of counsel claim fails.

## IV. SAG ISSUES

In his SAG and in his pro se Supplemental Statement of Additional Authority, Whitcher also appears (1) to assert that the superior court erroneously revoked his SSOSA based on his failure to maintain law abiding behavior, and (2) to challenge portions of the superior court's oral ruling that are not relevant to the court's reasons for revoking his SSOSA.[13] Both claims fail. As we previously explained, the superior court revoked Whitcher's SSOSA because he had been terminated from sex offender treatment, not because he had failed to maintain law abiding behavior. Moreover, the superior court's comments that Whitcher apparently challenges were

---

[12] More specifically, the superior court stated:

> [S]omebody who is amenable to treatment [is] that kind of person . . . who says, I accept authority. I'm willing to take care of the problem or at least try. I don't think that is . . . what Mr. Whitcher is about. *I do think we [the court] have been fooled to some extent.*

4 VRP at 267 (emphasis added).

[13] In his SAG/Supplemental Statement of Additional Authority, Whitcher asserts that the superior court revoked his SSOSA based on its incorrect "belief" that he "'did neither' of the two options suggested regarding concerns over a legitimate treatment provider." SAG at 3 (quoting 4 VRP at 263). We note that Whitcher's judgment and sentence provided that he would receive sexual deviancy treatment from Comte & Associates; but he was eventually was ordered to see therapist Tracer, who was no longer affiliated with Comte & Associates. In discussing this deviation from the technical terms of his judgment and sentence, the superior court noted that Whitcher could have accepted this change in his therapist assignment or he could have worked with his counsel to challenge the validity of his therapist assignment. Instead, he "did neither," refused to participate in his treatment, and acted in an insubordinate manner toward his CCOs. 4 VRP at 263. The superior court's statements ultimately did not affect either its determination that Whitcher violated his judgment and sentence by being terminated from treatment or its revocation of his SSOSA on this basis.

13

No. 42185-2-II

irrelevant to his treatment termination and, thus, also irrelevant to his SSOSA revocation.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.